UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TANKO PILABRE *et al.*,

Plaintiffs,

-v-

PARTS AUTHORITY, LLC *et al.*,

Defendants.

26 Civ. 1443 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

This decision resolves a motion to compel arbitration of cross-claims in this putative collective and class action. Claiming violations of the Fair Labor Standards Act and the New York Labor Law, plaintiffs sue, *inter alia*, (1) the staffing agencies that directly employed them—DRA Logistics Corp., 130 St. Equities LLC, AC Automotive, Inc., and AD Delivery & Warehousing Inc. (collectively, the "DRA defendants"); and (2) the operators of the warehouse where they worked—Parts Authority, LLC and Parts Authority-WAW LLC (together, the "Parts Authority defendants"). They allege that the DRA and Parts Authority defendants engaged in a "subcontracting scheme" under which they failed to pay plaintiffs minimum wages, overtime wages, and spread-of-hours pay, and failed to provide wage notices and statements. Dkt. 1 ("Compl.") ¶¶ 1, 85.

Pending now is the Parts Authority defendants' unopposed motion to compel arbitration and stay litigation of the cross-claims that the DRA defendants have brought against them. For the reasons that follow, the Court grants the motion in full.

# I. Background[1]

## A. The Parties

Parts Authority, LLC is a national automotive-parts distributor. Dkt. 64 ("McMullen Decl.") ¶ 4. Parts Authority-WAW LLC is an affiliate of Parts Authority, LLC. *Id.* ¶ 5. Together, the Parts Authority defendants own and operate a Parts Authority warehouse in the Bronx (the "Bronx Warehouse"). Compl. ¶ 17.

The DRA defendants are temporary staffing agencies that have provided workers to the Bronx Warehouse. *Id.* ¶ 30. Until around May 2025, they were operated jointly under the control of Amrit Dabie. *Id.* ¶¶ 33–38. Upon Dabie's passing, Bhagwandin Ram took over ownership and operation of the DRA defendants. *Id.* ¶¶ 39, 42.

Plaintiffs are current or former warehouse workers at the Bronx Warehouse who were directly employed by the DRA defendants. *Id.* ¶¶ 1–2, 99 (describing putative collective), 108 (describing putative class).

## B. Relevant Procedural History

On February 20, 2026, plaintiffs filed a putative class and collective action complaint. Dkt. 1. The Complaint alleges that defendants jointly engaged in a "subcontracting scheme" designed to skirt minimum- and overtime-wage requirements. *Id.* ¶ 85. Its gravamen is that the Parts Authority defendants subcontracted with the DRA defendants to "avoid including

---

[1] The Court draws these facts from the Complaint, Dkt. 1 ("Compl."); a declaration submitted by the Parts Authority defendants in support of their motion, Dkt. 64 ("McMullen Decl."); and the attached exhibit, Dkt. 64-1 ("Agmt."). On a motion to compel arbitration, the Court applies a standard "similar to that applicable for a motion for summary judgment." *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003). The Court therefore may consider materials outside the Complaint, such as affidavits and other admissible evidence. *See, e.g.*, *HBC Sols., Inc. v. Harris Corp.*, No. 13 Civ. 6327, 2014 WL 6982921, at *1 (S.D.N.Y. Dec. 10, 2014).

Plaintiffs . . . on Parts Authority's payroll" and that the defendants, under this arrangement, denied plaintiffs minimum and overtime wages required by law. *Id*.

On April 24, 2026, the Parts Authority defendants timely answered the Complaint. Dkt. 37.

On July 22, 2026, the DRA defendants answered the Complaint. Dkt. 62. In their answer, the DRA defendants asserted cross-claims against the Parts Authority defendants for "common-law indemnification," *id*. ¶¶ 71–75, "contribution," *id*. ¶¶ 76–79, and "contractual indemnification," *id*. ¶¶ 80–84. The allegations underlying the cross-claims are as follows: that (1) the Parts Authority defendants "owned, operated, managed, controlled, and maintained the warehouse facility located in the Bronx" where plaintiffs work, *id*. ¶ 67; (2) the Parts Authority defendants "exercised authority over the hiring, firing, work assignments, schedules, supervision, timekeeping, payroll practices, and the terms and conditions of employment" affecting plaintiffs, *id*. ¶ 68; (3) plaintiffs' damages, if any, "were caused in whole or in part by the acts, omissions, policies, practices, supervision, management, or[] control exercised by" the Parts Authority defendants," *id*. ¶ 69; and (4) any liability imposed on the DRA defendants "would be solely derivative, secondary, passive, vicarious, or otherwise attributable to the conduct of" the Parts Authority defendants, *id*. ¶ 70.

On August 12, 2026, the Parts Authority defendants filed the instant motion to compel arbitration of, and stay litigation as to, the cross-claims. Dkt. 65 ("Mot."). On August 31, 2026, after the deadline for the DRA defendants to respond to the motion lapsed, the Parts Authority defendants asked the Court to grant the motion as unopposed. Dkt. 80. On September 1, 2026, the Court *sua sponte* extended the DRA defendants' deadline to respond to September 14, 2026. Dkt. 84. The DRA defendants did not respond to the motion, and on September 21, 2026, the

Parts Authority defendants renewed their request that the Court grant the motion as unopposed. Dkt. 86.

### C. The Defendants' Agreement

In December 2023, Dabie, the DRA defendants' then–owner and president, executed on DRA Logistics Corp.'s behalf an agreement (the "Agreement") between that entity and Parts Authority, LLC. McMullen Decl. ¶ 7; *see also* Dkt. 64-1 ("Agmt."). Richard McMullen, senior vice president of national operations at Parts Authority, LLC, counter-signed the Agreement. McMullen Decl. ¶¶ 1, 8. The Agreement provided that DRA Logistics Corp. and its successors and assigns would provide workers to perform services for the Parts Authority defendants at the Bronx Warehouse on a temporary basis. Agmt. at 1.

In the Agreement, DRA Logistics Corp. agreed to indemnify the Parts Authority defendants "for all employment related claims brought against" them "by any employee or subcontractor of" DRA Logistics Corp., "its predecessor, successor or affiliates, whether occurring during the terms of this agreement, or before and after execution or termination of this agreement." *Id.* at 6.

The Agreement also contains an arbitration provision. *See id.* at 8. It provides:

> Any dispute, controversy, or claim arising out of or relating to this Agreement or any breach or termination of this Agreement, including but not limited to services provided under this Agreement, and any alleged violation of any federal, state, or local statute, regulation, common law, or public policy, whether sounding in contract tort, or statute, shall be submitted to and decided by binding arbitration.

*Id.* The provision includes a delegation clause, which reserves to the arbitrator's exclusive authority "any dispute relating to the enforceability or formation of this Agreement and the arbitrability of any dispute between the parties." *Id.*

The Agreement provides that "all matters arising out of or relating to this Agreement and the services provided hereunder . . . for all purposes shall be governed by and construed in

accordance with the laws of the State of New York without giving effect to any conflict of laws principles that would cause the laws of any other jurisdiction to apply." *Id.*

## II. Applicable Legal Standards

Under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"), an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* § 2. To decide whether a dispute is arbitrable, a court assesses: "(1) whether the parties agreed to arbitrate, and, if so, (2) whether the scope of that agreement encompasses the claims at issue." *Holick v. Cellular Sales of N.Y., LLC*, 802 F.3d 391, 394 (2d Cir. 2015) (citation omitted). "Only if the court concludes an agreement to arbitrate exists does it determine . . . the scope of the agreement to arbitrate." *Zachman v. Hudson Valley Fed. Credit Union*, 49 F.4th 95, 101 (2d Cir. 2022).

In deciding motions to compel, courts "apply a standard similar to that applicable for a motion for summary judgment." *Jacobson v. Live Nation Ent., Inc.*, No. 24 Civ. 3994, 2026 WL 1864990, at *2 (S.D.N.Y. June 29, 2026) (quoting *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017)). The Court considers "all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits." *Id.* (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 155 (2d Cir. 2002)).

The party moving to compel arbitration "bears an initial burden of demonstrating that an agreement to arbitrate was made." *Barrows v. Brinker Rest. Corp.*, 36 F.4th 45, 50 (2d Cir. 2022) (citation omitted). The moving party need not "show initially that the agreement would be enforceable, merely that one existed." *Hines v. Overstock.com, Inc.*, 380 Fed. App'x 22, 24 (2d Cir. 2010) (summary order) (emphasis omitted). Thereafter, the party "seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid."

*Harrington v. Atl. Sounding Co.*, 602 F.3d 113, 124 (2d Cir. 2010) (citing *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91–92 (2000)).

"[W]here the undisputed facts in the record require the matter of arbitrability to be decided against one side or the other as a matter of law, [the court] may rule on the basis of that legal issue and avoid the need for further court proceedings." *Wachovia Bank, N.A. v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 172 (2d Cir. 2011) (cleaned up). Where "there is a disputed question of material fact" as to formation of an agreement to arbitrate, the court holds a trial on that threshold issue before reaching the merits of the parties' dispute. *Barrows*, 36 F.4th at 49; *see also* FAA § 4.

## III. Discussion

### A. Existence of Agreement to Arbitrate

"Because an agreement to arbitrate is a creature of contract, . . . the ultimate question of whether the parties agreed to arbitrate is determined by state law." *Bell v. Cendant Corp.*, 293 F.3d 563, 566 (2d Cir. 2002); *see also Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) ("The threshold question of whether the parties indeed agreed to arbitrate is determined by state contract law principles."). Under New York law, as the parties seeking to compel arbitration, the Parts Authority defendants bear the burden to prove the existence of a valid agreement to arbitrate by a preponderance of the evidence. *See Kutluca v. PQ N.Y. Inc.*, 266 F. Supp. 3d 691, 700–01 (S.D.N.Y. 2017). They have borne that burden: The existence of a valid agreement, including an agreement to arbitrate, between the Parts Authority and DRA defendants is not reasonably disputed.

"A valid arbitration agreement requires a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement." *DiTella v. TransUnion, LLC*, No. 23 Civ. 11028, 2024 WL 3594567, at *4 (S.D.N.Y. July 31, 2024) (cleaned up). "By signing a

written instrument, a party creates presumptive evidence of its assent to enter into a binding agreement." *Id.*; *see also Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144, 149 (2d Cir. 2004) ("[I]n the absence of fraud or other wrongful act on the part of another contracting party, a party 'who signs or accepts a written contract . . . is conclusively presumed to know its contents and to assent to them.'" (citation omitted)).

In December 2023, Dabie signed the Agreement for DRA Logistics Corp. *See* McMullen Decl. ¶ 7; Agmt. at 11. That conclusively bound DRA Logistics Corp. to the Agreement's terms. *See DiTella*, 2024 WL 3594567, at *4. The rest of the DRA defendants are also bound. New York law permits liability for non-signatories to a contract where the non-signatory "is the alter ego of the signatory," "manifests an intent to be bound by the contract," or acts so as to show it is "in privity of contract or assumed obligations under the contract." *Pentacon BV v. Vanderhaegen*, 725 F. Supp. 3d 350, 382 (S.D.N.Y. 2024), *reconsideration denied*, No. 23 Civ. 2172, 2024 WL 3835334 (S.D.N.Y. Aug. 15, 2024). The DRA defendants do not dispute for purposes of this motion that they acted in concert, as successor entities, under the control of Dabie (and then Ram), to provide temporary workers under the Agreement. *See* Compl. ¶¶ 26–46; Mot. at 2. They are thus bound by the Agreement's terms. *See, e.g.*, *Northwell Health, Inc. v. Blue Cross & Blue Shield of S.C.*, No. 23 Civ. 603, 2024 WL 3823201, at *6 (E.D.N.Y. Aug. 13, 2024) (R. & R.) (non-signatory is bound by agreement under which it "assumed obligations" of performance); *Pentacon BV*, 725 F. Supp. 3d at 383 (all three avenues for non-signatory liability satisfied where signatory and non-signatory entities were owned and/or controlled by same individual, who negotiated and signed agreement on signatory entity's behalf for all entities' benefit).

For these reasons, the Parts Authority defendants have borne their burden to prove, by a preponderance of the evidence, the existence of a valid agreement—including an agreement to arbitrate—between the Parts Authority and DRA defendants.

**B. Applicability of Agreement to Arbitrate**

The DRA defendants, as the parties theoretically "seeking to avoid arbitration," "bear[] the burden of showing the agreement to be inapplicable or invalid." *Harrington*, 602 F.3d at 124 (quoting *Green Tree*, 531 U.S. at 91–92). Not having responded to the motion to compel arbitration, the DRA defendants have not made such a showing. The Court finds that the arbitration agreement clearly encompasses the cross-claims and must be enforced.

The arbitration provision applies to "[a]ny dispute, controversy, or claim arising out of or relating to" the Agreement, including those related to services provided thereunder. Agmt. at 8. It is "beyond contention that this exceedingly broad arbitration clause encompasses" the cross-claims. *Knickerbocker Dialysis, Inc. v. TrueBlue, Inc.*, 601 F. Supp. 2d 502, 504 (E.D.N.Y. 2009). As to the cross-claim for contribution, it is "clear" that a claim for contribution arises out of or relates to an agreement governing the relationship between the party seeking contribution and the party from which contribution is sought. *Id*. And as to the cross-claims for indemnification, a dispute over entitlement to indemnification under an agreement is "clearly" a dispute arising out of or relating to such agreement. *See Best Concrete Mix Corp. v. Lloyd's of Lond. Underwriters*, 413 F. Supp. 2d 182, 188 (E.D.N.Y. 2006) ("[A] dispute over plaintiffs' entitlement to indemnification as an additional insured under the terms of the policy is clearly a dispute 'under or in connection with' that policy."). That is all the more obvious in light of the Agreement's express indemnification provision, on which the contractual-indemnification cross-claim explicitly relies. *See* Dkt. 62 ¶ 81; Agmt. at 6 (providing that DRA Logistics Corp. will indemnify the Parts Authority defendants for any claims brought against them by DRA Logistics

Corp.'s employees). Moreover, all three cross-claims fall within the arbitration provision in that they seek to apportion liability for claims arising from plaintiffs' provision of services under the Agreement, such that the cross-claims clearly arise from and relate to "services provided under [the] Agreement." Agmt. at 8.

Finally, even if the DRA defendants had challenged the arbitrability of their cross-claims in briefing this motion, the Agreement's delegation clause reserves to the arbitrator "any dispute relating to . . . the arbitrability of any dispute between the parties." *Id.* Any dispute over arbitrability—beyond a specific challenge to the enforceability of the delegation clause itself—is thus reserved to the arbitrator. *See Dougherty v. Zynga, Inc.*, No. 26 Civ. 2772 (PAE), 2026 WL 3061783, at *8 (S.D.N.Y. Oct. 13, 2026) (subject to generally applicable contract defenses, "[w]hen a contract delegates questions of arbitrability to an arbitrator, 'the courts must respect the parties' decision'" (quoting *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019))).

For these reasons, the valid agreement to arbitrate between the Parts Authority and DRA defendants encompasses the cross-claims, which must be arbitrated.

**CONCLUSION**

For the reasons above, the Court grants the Parts Authority defendants' motion to compel arbitration of the DRA defendants' cross-claims. The Court accordingly stays litigation of the DRA defendants' cross-claims, pending resolution of the arbitration. *See Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015). The Court respectfully directs the Clerk of Court to terminate the motions pending at Dkts. 63 and 80. The Parts Authority and DRA defendants are directed to file a joint status update every 60 days as to the status of the arbitral proceeding.

For avoidance of doubt, this stay applies only to the DRA defendants' cross-claims. The case management plan, Dkt. 59, continues to govern the schedule regarding the remaining claims in this litigation.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: October 22, 2026
New York, New York